UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM HOSS,

                Plaintiff,

v.

UNKNOWN PARTY et al.,

                Defendants.

_____/

Case No. 1:26-cv-664

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The

events about which he complains occurred at that facility. In this action, Plaintiff sues MTU Dentist Unknown Party, MTU Grievance Coordinator Unknown Lake, and MDOC Director Heidi Washington. Defendants are sued in their official and personal capacities.

Plaintiff alleges that on July 10, 2025, he "received an appointment for emergency [dental] treatment."[1] (Compl., ECF No. 1, PageID.3.) Plaintiff "asked that three teeth be pulled and was told they would only pull the one that was causing [him] the most pain. If [he] wanted the [other] two pulled, [he] would have to put in another kite." (*Id*.) Plaintiff then asked to be "put on the list for another appointment" at that time, and "the Dentist [Defendant Unknown Party] told [him], 'No.'" (*Id*.)

In response to these events, Plaintiff "wrote a grievance . . . [and] it was denied." (*Id*.) On July 23, 2025, Plaintiff "requested a second step grievance appeal" for his grievance. (*Id*.) Plaintiff then submitted a grievance on August 3, 2025, regarding Defendant Lake, the MTU Grievance Coordinator, because Defendant Lake "refused to send [Plaintiff] a second step grievance appeal form for fourteen days." (*Id*.) Plaintiff claims that "both of these two grievances were denied at the third step." (*Id*.)

On an unspecified date, Plaintiff "put in another emergency kite." (*Id*.) He was "called out to Dental to remove two teeth" on September 9, 2025. (*Id*.) At that appointment, he was "told by the Dentist to pick the one that hurt the most and that they would not put me on the list to have the other one pulled." (*Id*.) Plaintiff claims that Defendant Unknown Party told him to "put in another medical kite." (*Id*.)

---

[1] In this opinion, the Court corrects the punctuation and abbreviations in quotations from Plaintiff's filings.

Plaintiff then wrote another grievance on an unspecified date, and it was denied. (*Id.*) He "requested a second step grievance appeal form and did not receive one for eleven days, so [he] wrote another grievance on Grievance Coordinator Lake on October 20, 2025." (*Id.*) Plaintiff claims that "both grievances were denied at the third step." (*Id.*)

On January 20. 2026, Plaintiff "finally got [his] tooth on the left side pulled . . . over six months after putting in [his] initial medical kite." (*Id.*) Plaintiff claims he has "suffered severe pain since July 10, 2025." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to include a claim that Defendant Unknown Party violated Plaintiff's Eighth Amendment rights relating to his dental care. Additionally, Plaintiff's complaint avers that his Fourteenth Amendment due process rights relating to his grievances were violated by Defendant Lake. Plaintiff seeks compensatory and punitive damages.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

3

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Washington

Plaintiff lists MDOC Director Washington as a Defendant in this action; however, Plaintiff fails to allege any facts showing how Defendant Washington was personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (2007) (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any

4

degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendant Washington in the body of his complaint. (*See generally* Compl., ECF No. 1.) Plaintiff's claims against this Defendant therefore fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant Washington liable due to her supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676 (2009); *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, Plaintiff's complaint will be dismissed for failure to state a claim against Defendant Washington.

### B.    Eighth Amendment Medical Care Claims

Plaintiff alleges that he "suffered severe pain" for at least six months. (Compl., ECF No. 1, PageID.3.) At his initial appointment on July 10, 2025, he asked Defendant Unknown Party, the MTU dentist, to extract three of his teeth. (*Id*.) Instead, Plaintiff's three teeth were instead extracted one at a time: on July 10, 2025, September 9, 2025, and January 20, 2026. (*See id*.) The Court therefore construes Plaintiff's complaint to include a claim that Defendant Unknown Party violated his Eighth Amendment rights as related to his dental care.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

6

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605

(6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at \*2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410, 411 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Objective Component

Plaintiff alleges he has "suffered severe pain since July 10, 2025," and had three teeth extracted over the course of six months. (*See* Compl., ECF No. 1, PageID.3.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has alleged sufficient facts to show a serious medical condition.

### 2.    Subjective Component

Turning to the subjective component—i.e., the requirement that a plaintiff alleges sufficient facts to show that "the official [or medical provider was] both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and that the official or medical provider "also dr[e]w the inference," *Farmer*, 511 U.S. at 837—the Court addresses Plaintiff's allegations against Defendant Unknown Party below.

Plaintiff claims that at his first appointment with Defendant Unknown Party on July 10, 2025, he requested three of his teeth be pulled at one time. (Compl., ECF No. 1, PageID.3.) Defendant Unknown Party evidently disagreed and only pulled one of Plaintiff's teeth at that appointment. (*Id.*) Defendant Unknown Party would not "put [Plaintiff] on the list for another appointment," but instead instructed Plaintiff to "put in another kite" to have his other teeth addressed. (*Id.*) Even if Defendant Unknown Party's decisions to pull one tooth at a time resulted in an inadequate course of treatment or caused suffering, it is still not tantamount to deliberate indifference. *See Gabehart*, 1997 WL 160322, at *2.

Defendant Unknown Party explicitly informed Plaintiff to submit a kite to receive additional dental care and examined Plaintiff when he submitted kites. (*See* Compl., ECF No. 1, PageID.3.) For example, when Plaintiff put in an emergency kite, he was seen by Defendant Unknown Party on September 9, 2025. (*Id.*) Plaintiff does not allege that there was any undue delay between his submission of the emergency kite and his appointment with Defendant Unknown Party. (*See id.*) Nor does Plaintiff allege that he submitted additional kites or attempted to access any dental care in the two-month interval between his July 2025 and September 2025 appointments. (*See id.*) Defendant Unknown Party again told Plaintiff at his September 2025 appointment that one tooth would be pulled and he "would have to put in another medical kite" to have the other tooth addressed. (*Id.*, PageID.3.) Plaintiff did not submit any kites but instead

9

submitted additional grievances. (*Id*.) Plaintiff's final appointment with Defendant Unknown Party was on January 20, 2026, and his third tooth was pulled on that date. (*Id*.)

Plaintiff's allegations amount to faulting Defendant Unknown Party for "fail[ing] to provide more or better treatment, not indifference to his condition." *Mitchell*, 553 F. App'x at 605. As detailed above, Plaintiff was examined by Defendant Unknown Party on three occasions, and had a tooth pulled at each appointment. (Compl. ECF No. 1, PageID.3.) Although Plaintiff wanted all three teeth pulled at his first appointment and wanted to be placed "on the list" for future appointments, he was instructed by Defendant Unknown Party at each examination to file a kite to receive future dental treatment. (*Id*.) Plaintiff filed grievances but makes no claims that any medical kites went unaddressed. (*See id*.) Indeed, each time Plaintiff filed a kite, he was seen by Defendant Unknown Party and had a tooth pulled. (*See id*.) Plaintiff's complaints regarding the method of accessing dental care and the course of treatment he received from Defendant Unknown Party are insufficient to state a deliberate indifference claim. *See Darrah*, 865 F.3d at 372; *see also Estelle*, 429 U.S. at 105. Plaintiff asks the Court to second guess Defendant's medical judgments, "as opposed to enforce the cruel-and-unusual-punishments ban in the Eighth Amendment." *Mitchell*, 553 F. App'x at 605. Therefore, because Plaintiff fails to show that Defendant's actions constituted deliberate indifference, Plaintiff fails to state an Eighth Amendment claim against Defendant Unknown Party.

In summary, for the reasons set forth above, Plaintiff's Eighth Amendment claims will be dismissed for failure to state a claim.

### C.    Fourteenth Amendment Due Process Claims

Plaintiff's complaint alleges that on at least two occasions, Defendant Lake, as the MTU Grievance Coordinator, delayed providing Plaintiff with a "second step grievance appeal form." (Compl., ECF No. 1, PageID.3.) Plaintiff first requested this appeal form on July 23, 2025, and

10

alleges that Defendant Lake "refused to send [him] a second step grievance appeal form for fourteen days." (*Id*.) With regards to a later request for a second step grievance appeal form, Plaintiff alleges a delay of eleven days from Defendant Lake. (*Id*.) Plaintiff's complaint contains no additional allegations against Defendant Lake. (*See id*.) Plaintiff raises a Fourteenth Amendment "due process violation for [Defendant Lake] intentionally delaying the grievance procedure." (*Id*., PageID.3.)

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any response, or lack thereof, to Plaintiff's grievances did not deprive Plaintiff of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims against Defendant Lake regarding his use of the grievance procedure at MTU will be dismissed for failure to state a claim.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v.*

11

*Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this Opinion will be entered.


Dated: June 23, 2026                                       /s/ Hala Y. Jarbou
                                                          HALA Y. JARBOU
                                                          CHIEF UNITED STATES DISTRICT JUDGE